# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JUSTIN KRENDL, Administrator of the Estate of Matthew Krendl, <br>                 Plaintiff, <br><br> vs. <br><br> INTERMARK TRANSPORT, et al., <br><br>                 Defendants. | CASE NO. 1:19CV2277 <br><br> SENIOR JUDGE <br> CHRISTOPHER A. BOYKO <br><br> **OPINION AND ORDER** |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #59) of Defendants Intermark Transport and Bogdan Adrian Petrisor for Summary Judgment. For the following reasons, the Motion is denied.

## I. FACTUAL BACKGROUND

Plaintiff Justin Krendl, as Administrator of the Estate of Matthew Krendl, sued Defendants Intermark Transport and Bogdan Adrian Petrisor, alleging Petrisor, while in the scope of his employment with the Intermark trucking company, failed to maintain an assured clear distance when he struck the rear of the vehicle being operated by Plaintiff's decedent.

On August 28, 2017, Matthew Krendl was operating a red 2001 Toyota 4Runner; and

at 9:38 p.m., he stopped in the right-hand traveling lane of Interstate 71 South at mile marker 205, an area of the highway with no streetlights. The Toyota 4Runner was owned by his girlfriend, Third-Party Defendant May Anne Doronila.

Defendant Petrisor approached in the right lane on Interstate 71 South, operating a loaded semi tractor-trailer. Defendant Petrisor obtained his commercial driver's license ("CDL") in 2010. (ECF DKT #59-6 at 8-9). He traveled the same route from Quebec, Canada to Columbus, Ohio, twice a week since 2017. (*Id*. at 15-16). On this particular occasion, the area of Interstate 71 was dark and the 4Runner in the lane ahead had no lights on. Defendant Petrisor testified that he was unable to see the vehicle operated by Matthew Krendl until it was too late to slow down or avoid striking it. (*Id.* at 76-77).

At the same time, an individual named Bryan Smith was driving in the center lane of Interstate 71 South. (ECF DKT #53-1 at 11). He intended to pass the semi tractor-trailer and exit the highway. *Id*. Smith testified that he never saw a vehicle or taillights in the right-hand lane. (*Id*. at 11, 13).

The Ohio State Highway Patrol investigation determined that Krendl was operating the vehicle with a suspended driver's license, due to repeated offenses for driving under the influence of alcohol. (Trooper Harold McCumbers' Deposition, ECF DKT #56-1). Krendl was in the right lane on Interstate 71 (the lane of travel designated for semis unless they are passing) with his vehicle lights off. *Id.* Toxicology results later showed that Krendl's blood alcohol concentration on August 28, 2017, was over three times the legal limit. Defendant Petrisor was not cited for any traffic violation. *Id.*

Matthew Krendl suffered fatal injuries in the collision.

Plaintiff, as Administrator of the Estate of Matthew Krendl, filed suit for Negligence and Wrongful Death in Medina County Common Pleas Court against Intermark and Petrisor. On September 30, 2019, the matter was removed to federal court on the basis of diversity. Both Intermark and Petrisor are citizens of Quebec, Canada.

Defendants move for judgment in their favor, arguing that the Estate's recovery is precluded by Matthew Krendl's own negligence. That is, he was driving with a suspended license; he was highly intoxicated; and he parked the vehicle without any lights in a travel lane of the highway. Defendants assert that Matthew Krendl's actions were the sole proximate cause of the collision on August 28, 2017.

In the Opposition Brief (ECF DKT #67), Plaintiff contends that Defendant Petrisor was per se negligent for violating the Assured Clear Distance statute; and moreover, he was negligent for failing to operate Intermark's truck in accordance with his commercial driver's training. Plaintiff bolsters his position with the report of his liability expert, James Crawford. (ECF DKT #68-3). As a professional and as an employee-driver for Defendant Intermark, Defendant Petrisor was required to follow the safety rules in the Commercial Driver's License Manual for avoiding hazards, regulating speed and assessing road and lighting conditions. In addition, Plaintiff objects to Defendants' use of Trooper McCumbers' opinion testimony. Since Trooper McCumbers is not an accident reconstructionist, he cannot offer opinions on the cause of the accident. Allowing for some degree of negligence on the part of Matthew Krendl though, Plaintiff contends that comparative negligence is an issue for a jury and that Defendants' Motion should be denied.

Defendants submit their Reply Brief (ECF DKT #71). They argue that the CDL

Manual was not included in the allegations in Plaintiff's Complaint; and nonetheless, the Manual cannot establish a prima facie case of negligence or negligence per se. As for the testimony provided by Trooper McCumbers, he is permitted to testify to his data collection and personal observations at the scene.

## II. LAW AND ANALYSIS

### Standard of Review

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Applicable law**

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law. *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 427 (1996). Neither party argues that the forum state's choice-of-law rules require the Court to apply the substantive law of another state, and the subject accident took place in Ohio. Consequently, the Court will apply Ohio substantive law.

**Negligence**

The elements of a negligence claim in Ohio are: the existence of a duty, a breach of that duty and injury resulting proximately therefrom. *Wallace v. Ohio Dept. of Commerce*, 773 N.E.2d 1018, 1025–26 (Ohio 2002); *Mussivand v. David*, 45 Ohio St.3d 314 (1989);

*DiGildo v. Caponi*, 18 Ohio St.2d 125 (1969).

A finding of negligence per se means that as a matter of law, the actor breached a duty owed to another. *Pond v. Leslein*, 72 Ohio St.3d 50, 647 N.E.2d 477, 479 (Ohio 1995). That finding determines only two of the essential elements of a negligence claim, *i.e.*, duty and breach of duty. Jury questions still remain concerning comparative negligence, proximate cause and damages. *Id*. at 53.

**Assured Clear Distance**

Ohio Revised Code § 4511.21(A) provides:

No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.

A driver violates the assured-clear-distance-ahead rule if the driver collides "with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible." *Wheeler v. Estes Express Lines*, 53 F.Supp.3d 1032, 1038 (N.D. Ohio, W. Div. 2014), quoting *Pond*, 72 Ohio St.3d at 52.

"Violation of the assured clear distance ahead statute constitutes negligence per se." *Id.* at 53.

"Where conflicting evidence is presented as to any of the elements necessary to establish a violation of the statute, a jury question is created." *Ziegler v. Wendel Poultry Serv., Inc.*, 67 Ohio St. 3d 10, 615 N.E.2d 1022, 1026 (1993).

Generally, "in cases where a collision occurs at night or during weather conditions

that reduce visibility, courts hold that a jury question exists as to whether the object the driver struck is 'reasonably discernible.'" *Pond,* 72 Ohio St.3d at 52.

**Commercial Drivers' License (CDL) Manual**

In Ohio, courts instruct that the probative value of commercial drivers' guidelines is minimal. *Jones v. Wiseman*, 838 Fed. App'x 942, 950 (6th Cir. 2020). "It is simply common sense that people driving CMVs [commercial motor vehicles] will need the skills and knowledge necessary to safely operate those vehicles rather than the skill and knowledge required to drive passenger vehicles." *Id*. While not completely irrelevant, the CDL Manual provides no standards against which jurors could measure a defendant's actions. *Id.*

"There is no case law in Ohio that imposes a heightened duty of care for CDL drivers." *Davis v. Brown Local School District*, 131 N.E.3d 431, 445, 2019-Ohio-246 (7th Dist. 2019). Materials incorporated in manuals and in training for CDL licensure are not mandatory or legally enforceable. *Id*.

**Analysis**

Plaintiff Administrator alleges that, on August 28, 2017, Defendant Petrisor negligently operated his vehicle by failing to maintain reasonable control and failing to maintain an assured clear distance, causing injury and the subsequent wrongful death of Plaintiff's decedent. *See* Complaint, ECF DKT #1 at ¶ 4. Plaintiff directs the Court to evidence which he contends creates genuine issues of fact defeating Defendants' Motion for Summary Judgment.

According to Crawford, Plaintiff's liability expert, the CDL Manual requires commercial drivers to slow down when using their low-beam headlights at night. (Crawford

Report, ECF DKT #68-3 at 10 ). Also, the CDL Manual advises commercial drivers to have a plan, take evasive measures when confronted with a hazard and use the right shoulder if necessary to avoid a collision. (*Id*. at 11).

Petrisor testified that he had no problem with visibility, although it was dark. He was traveling at 65 miles per hour, below the posted 70 mile-per-hour speed limit on that portion of Interstate 71. By the time Petrisor saw decedent's vehicle, he testified that it was too late to take any evasive action. (Petrisor Deposition, ECF DKT #54-1 at 64-65, 72).

Plaintiff's expert concludes that Defendant Petrisor's non-compliance with the CDL Manual was negligent and proximately caused the fatal collision. "Mr. Petrisor failed to reduce his speed for nighttime conditions, precluding the ability to take timely appropriate evasive action by stopping and/or moving onto the paved right shoulder. . ." (Crawford Report, ECF DKT #68-3 at 14).

As the Court has noted, the CDL Manual and other instructions for commercial drivers do not carry the force of law. *Davis, supra*. Moreover, Ohio has yet to impose a heightened standard of care upon commercial truck drivers. *Id*. To do so would illogically "place some portion of the responsibility for every accident on a commercial driver, simply because he or she has been instructed to be a defensive driver." *Id*. at 446. The Court, therefore, disregards Plaintiff's expert's opinion that Defendant is negligent for violating the Commercial Drivers License Manual.

Nevertheless, the Court is persuaded that a material factual dispute exists with regard to Ohio's Assured Clear Distance statute. One of the elements necessary to establish a violation of R.C. § 4511.21(A) is "reasonable discernability."

On deposition, Defendant Petrisor testified: "So at the moment when I saw the vehicle in front of me, it be so late to do something. It [sic] mean I didn't see because it didn't have the lights on, so it's not visible for me." (ECF DKT #54-1 at 72).

Bryan Smith, who was driving in the center lane next to Defendant Petrisor's truck, testified that he did not see any taillights ahead of the semi truck. (ECF DKT #53-1 at 11). Although his line of vision was clear, Smith never saw any vehicle in the right lane. (*Id*. at 13).

Trooper McCumbers was dispatched to the scene on August 28, 2017. He observed that the conditions were "pitch black." (ECF DKT #56-1 at 43). The Toyota 4Runner in which Matthew Krendl was found was dark-colored (*Id*. at 44) and the lights were off. (*Id*. at 29). Krendl's vehicle was in the right-hand travel lane and the gear knob was in park. (*Id*.). Following the on-scene investigation, Defendant Petrisor was not cited for failure to maintain an assured clear distance ahead. (*Id.* at 38, 47).

Plaintiff directs the Court's attention to Defendant Petrisor's testimony that his headlights, on low-beam, illuminated only 25 feet ahead. (ECF DKT #54-1 at 64-65). When asked about the range of visibility with the use of high beams, Petrisor responded: "Around 75 feet." (*Id*. at 77). This inquiry continued:

**Q**. My question is, how long are you trained that it's going take that vehicle to stop at 65 miles an hour carrying 39,000 pounds?
 **A**. 200 feet. It's a guess. I never put a stop like this.
(*Id*. at 79).

Petrisor testified further that he did not need to slow his speed below 65 miles per hour because there was no problem with visibility. (*Id*. at 64). This was the fastest speed he was permitted to travel, as his vehicle had measures in place to prevent him from going faster.

(*Id*. at 71).  Petrisor took no evasive action prior to the collision because he said there was no time.  (*Id*. at 72).  According to the data in the truck's Engine Control Module, Petrisor did not apply the brakes until two seconds after both vehicles came to a stop off the side of the road.  (Crawford Report, ECF DKT #68-3 at 5).

Although the Ohio State Highway Patrol Report does not note that Defendant Petrisor was fatigued, Petrisor acknowledges on deposition that he had been driving at least seven hours and forty minutes straight at the time he encountered Mr. Krendl's vehicle.  (ECF DKT #54-1 at 58-59).

Plaintiff points out that Ohio law requires all vehicles to have rear reflectors visible for 300 feet; though there is no evidence whether or not the reflectors were present on Krendl's vehicle  The pertinent statute reads in part as follows:

> R.C. § 4513.06 -  <u>Red reflectors required</u>
>
> (A) Every new motor vehicle sold after September 6, 1941, and operated on a highway, other than a commercial tractor, to which a trailer or semitrailer is attached shall carry at the rear, either as a part of the tail lamps or separately, two red reflectors meeting the requirements of this section, . . .
>
> Every such reflector shall be of such size and characteristics and so maintained as to be visible at night from all distances within three hundred feet to fifty feet from such vehicle.

Nonetheless, Petrisor testified that he did not see any lights or reflectors on the rear of the Toyota 4Runner.  (ECF DKT #54-1 at 72).

Upon consideration of all the evidence presented, the Court finds there is "sufficient disagreement to require submission to a jury."  *Amway*, 323 F.3d at 390 (quoting *Anderson*, 477 U.S. at 251-52).  There are material issues of fact as to whether decedent Matthew Krendl's vehicle was "reasonably discernible" so as to demonstrate negligence on

Defendants' part under the Ohio Assured Clear Distance statute.

It is undisputed that decedent Matthew Krendl's driver's license was permanently suspended due to multiple drunk driving offenses.  It is also unquestioned that his blood alcohol level was three times the legal limit in Ohio.  The facts are uncontested that Krendl's car was stopped, without any lights illuminated, in the right-hand travel lane of Interstate 71 southbound at 9:30 p.m. on the  night of August 28, 2017.  These factors support a finding of negligence on the part of Plaintiff's decedent, Matthew Krendl.

By the same token, however, Defendant Petrisor was operating his semi-tractor trailer at nearly 65 miles per hour on a night which Trooper McCumbers described as "pitch black." Defendant Petrisor was using his "low beams" and testified that he could only see 25 feet ahead of him with that headlight illumination.  Defendant Petrisor also estimated that, at that speed and hauling 39,000 pounds, he could not stop in a distance any less than 200 feet. Defendant Petrisor stated that he saw no reflectors on the stopped vehicle; although a 2001-Model Toyota was, by law, likely equipped with them.  Defendant Petrisor does not argue that he was unable to reduce his speed when he encountered the extreme darkness that night. There is no evidence that Defendant Petrisor applied his brakes or took any evasive action once he perceived the hazard in his path.

Plaintiff Administrator, the non-moving party, has identified genuine facts in dispute as to "reasonable discernability," a necessary element for determining assured clear distance liability, proximate causation and comparative negligence.

It bears repeating that, "where conflicting evidence is presented as to any of the elements necessary to establish a violation of the statute, a jury question is created." *Ziegler*,

-11-

615 N.E.2d at 1026; and "in cases where a collision occurs at night or during weather conditions that reduce visibility, courts hold that a jury question exists as to whether the object the driver struck is 'reasonably discernible.'" *Pond,* 72 Ohio St.3d at 52.

### III. CONCLUSION

Therefore, viewing the facts and all inferences in the light most favorable to the Plaintiff, the Court denies the Motion (ECF DKT #59) of Defendants Intermark Transport and Bogdan Adrian Petrisor for Summary Judgment.

**IT IS SO ORDERED.**

**DATE: September 9, 2021**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**